IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-19605-LSS |
| | ) | (Chapter 11) |
| 5410 30TH STREET DC LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| 5410 30TH STREET DC LLC, | ) | Adv. Case No. 26-00129-LSS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IBI FALCON US LLC, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Come now IBI Falcon US LLC ("IBI Falcon"), IBI SBL Investment LP ("IBI SBL"), Amir Golan ("Mr. Golan"), Oren Streit ("Mr. Streit"), and Tova Greenbaum ("Mr. Greenbaum") (collectively, the "Defendants" and each a "Defendant"), each making a special appearance by and through undersigned counsel, in response to the motion of 5410 30th Street DC LLC (the "Debtor" or "Plaintiff") for imposition of a temporary restraining order and preliminary injunction (the "Motion"), DE #11, and state as follows:

**I.      Preliminary Statement**

As of the filing of this brief, none of the Defendants have been served with a summons in this matter, nor did the Debtor timely serve the Motion—formally or informally—on the Defendants directly or through their counsel. While not as egregious as the first time the Debtor sought such relief and failed to effectuate service, the Debtor did nonetheless once again miss the

1

service deadline of 5:00 pm on June 9, 2026, *see* DE #16, by only causing the subject order to be e-mailed at 10:00 pm that night, *see* E-mail, attached hereto as Exhibit A.

Aside from the procedural and temporal issues this has created, such also speaks to the lack of exigency *sub judice*. The Debtor has now failed—at least twice—to timely serve notice of a hearing on a motion for injunctive relief. This is not a failure that would be likely to accompany an actual emergency circumstance warranting an emergency hearing.

Additionally, Messrs. Golan, Streit, and Greenbaum are natural persons who are residents of the State of Israel. *See* Complaint, DE #1, at ¶¶ 7-9. That country, in turn, is a signatory to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters. *See Doe v. State of Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2005). So the tendering of actual service upon those Defendants is a matter of international treaty law.

For these reasons, while *all* of the Defendants appear herein for the sole and limited purpose of opposing the Motion, this appearance ought to be construed as a "special appearance," expressly limited in nature, since service of process has been neither attempted nor effectuated in this case.

Additionally, the failure of the Plaintiff to actually give notice of the deadline to object to the Motion, and of the scheduled hearing thereupon, is an independent ground upon which to deny the Motion at this time.

## II.    Introduction

The Motion seeks to enjoin a noteholder, the principals of the noteholder, and a prior noteholder against whom the Debtor is pursuing a civil contempt claim in the main bankruptcy case, from communicating with the guarantor of the promissory note (who is the principal of the Debtor). Not only would such relief constitute a prior restraint on speech, and all-but-eviscerate the guaranty signed by Zanetta Williams ("Ms. Williams"), the aforesaid guarantor, but the subject

2

relief is palpably broader than that provided for in section 362 of title 11 of the Untied States Code (the "Automatic Stay"). The Debtor is, in essence, seeking to extend the scope and reach of the Automatic Stay in connection with an adversary proceeding in which the Debtor's causes of action are premised upon alleged violations of the Automatic Stay.

Stated otherwise: Any feigned exigency in obtaining a temporary restraining order (a "TRO") or preliminary injunction (a "PI") is necessarily undermined by the fact that the Automatic Stay is already an injunction binding upon the Defendants (and the rest of the universe on notice of the Debtor's bankruptcy case). The Debtor is either not content with the actual reach of the Automatic Stay and now seeks to extend that reach, and/or the Debtor is seeking an injunction to enforce the terms of an injunction. Neither of these constructs are sensible.

More problematically, however, the Motion fails upon examination of the factors underlying injunctive relief. The Debtor does not have any likelihood of success on the merits of this case because the facts allegedly constituting Automatic Stay violations, as set forth in the Complaint, do not actually constitute violations of the Automatic Stay. Nor has the Debtor demonstrated the probability of any irreparable harm being incurred should a TRO or PI not be entered. Meanwhile, the balance of equities strongly disfavors prohibiting a lender from collecting on a guaranty. And public policy militates against entering an injunction that amounts to a prior restraint on speech absent extraordinary circumstances clearly not present *sub judice*.

For these reasons, and as extrapolated upon *infra*, the Defendants respectfully pray the Motion be denied.

### III. Standard: Injunctive Relief

Familiarly, a party seeking entry of a TRO or PI ". . . must establish four factors: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm if

preliminary relief is not granted; (3) that the balance of equities favors them; and (4) that an injunction is in the public interest." *Maryland v. Noem*, __ F.Supp.3d __, 2026 U.S. Dist. LEXIS 54452, at *3 (D. Md. Mar. 11, 2026) (citing *See Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008))). *See also se Medicalincs, LLC v. Coordinating Ctr. for Home & Cmty. Care, Inc.*, 686 F. Supp. 3d 415, 419 (D. Md. 2023) (noting the same factors to govern TROs and PIs).

The four factors are conjunctive in nature. While some weighing of each is appropriate in the *sui generis* construct of a given case, "[g]ranting a preliminary injunction requires analysis of each *Winter* factor because a preliminary injunction can be granted only if every factor is met.  Yet *denying* a preliminary injunction only takes the rejection of a single factor." *Frazier*, 86 F.4th at 544 (emphasis in original) (citing *Winter*, 555 U.S. at 20; *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 423 (4th Cir. 1999)).

IV.     **Argument: The Motion Merits Denial**

a.  **There is No Likelihood of Success on the Merits**

The complaint underlying this adversary proceeding (the "Complaint") sets forth six causes of action. The Plaintiff does not have a probability of succeeding on any of those six claims. And such is, unto itself, ultimately dispositive of the Motion: one cannot obtain injunctive relief in connection with claims that are unlikely to prove ultimately successful.

Initially, it bears notation that of the six causes of action, only two are actually cognizable at law. Count III of the Complaint is for "Preliminary and Permanent Injunctive Relief." This is not a cause of action. *See, e.g.*, *Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017) ("Injunctive relief is a remedy, not a cause of action.").

4

Count IV of the Complaint is for "Damages," with a claim being made under sections 362(k) and 105(a) of title 11 of the United States Code. This is also not a cause of action. *See, e.g.*, Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) ("Punitive damages are not a cause of action.") (citing *Hawkins v. Hawkins*, 400 S.E.2d 472, 474 (N.C. Ct. App. 1991); *Zayas v. Adcor Indus.*, 2017 U.S. Dist. LEXIS 157208, at *22 (D. Md. Sep. 26, 2017) ("Count I, titled 'Money Damages; Declaratory Relief' is not a cause of action in Maryland but rather a type of relief."); *Smith v. Horman*, 2020 Md. App. LEXIS 740, at *14 (Md. App. July 27, 2020) (affirming a trial court order of dismissal where the lower court ". . . found that the items of damages were not 'actual causes of action. . .'"). To be sure: there exists an independent cause of action for a violation of the Automatic Stay where such a violation actually occurs. *See Houck v. Substitute Tr. Servs.*, 791 F.3d 473, 481 (4th Cir. 2015). Counts I and II of the Complaint appear to seek such relief. Yet "Damages" is a form of relief, not an independent cause of action.

Count V is for "Civil Contempt." This is also not a cause of action. *See, e.g.*, *Enodis Corp. v. Emplrs. Ins. (In re Consol. Indus. Corp.)*, 360 F.3d 712, 716 (7th Cir. 2004) ("As an initial matter, an adversary proceeding is not the proper vehicle to present a contempt claim, as civil contempt is a method of enforcing a court order, not an independent cause of action.") (citing *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993)); *Maynard v. United Servs.*, 2022 U.S. Dist. LEXIS 163123, at *13 (N.D. Cal. Sep. 9, 2022) ("Contempt of Court is not a cause of action that can be alleged in a complaint by a plaintiff.").

Count VI is for an extension of the Automatic Stay to prohibit collection of the guaranty signed by Ms. Williams. While this form of relief *does* require the filing of an adversary proceeding, *Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc.)*, 623 B.R. 53, 64

(Bankr. D. Del. 2020), the relief sought is injunctive in nature, *id.* As such, this is also not a cause of action but, rather, a form of relief. *See Blankenship*, 850 F.3d at 640.

So the Plaintiff is ultimately left with only causes of action: claims for declaratory relief pegged to putative violations of the Automatic Stay. Both have been extensively briefed in the main bankruptcy case. *See In re 5410 30th Street DC LLC*, Case No. 25-19605-LSS (Bankr. D. Md. 2025) at DE #68, DE #175. That briefing will not be fully rehashed herein, other than to generally observe that (i) the recording of documents in the land records, before IBI Falcon or IBI SBL was on notice of the bankruptcy case, does not constitute a violation of the Automatic Stay, *see Ford Motor Credit Co. v. Hemsley (In re Bennett)*, 317 B.R. 313, 316 (Bankr. D. Md. 2004); (ii) neither of the documents recorded in the land records actually violate any of the provisions of the Automatic Stay in any event; and (iii) communications aimed at achieving a settlement— especially when had with a guarantor of the Debtor's obligation to IBI Falcon—are also not violative of the Automatic Stay.

Plainly, ". . . the automatic stay does not bar settlement negotiations. . ." *In re Lutheran Home & Servs. for the Aged, Inc.*, 670 B.R. 874, 876 (Bankr. N.D. Ill. 2025). Some courts—outside the Fourth Circuit—have found that settlement communications may become stay violations if they enter "coercive or harassing" territory. *See In re Keaty*, 350 B.R. 723, 726 (Bankr. W.D. La. 2006); *Diamond v. Premier Capital, Inc. (In re Diamond)*, 346 F.3d 224, 227 (1st Cir. 2003); *In re Lyubarsky*, 615 B.R. 924, 930 (Bankr. S.D. Fla. 2020). However, the cases in which "coercive or harassing" conduct has been found are cases in which the stay violation included conduct bordering on—if not outright constituting—extortion. *See Diamond*, 346 F.3d at 226 (an attorney for the creditor "allegedly told Diamond's attorney that if the dischargeability issue was not resolved in Premier's favor, he would take action at the New Hampshire Real Estate Commission

6

to revoke Diamond's real estate broker's license."); *Lyubarsky*, 615 B.R. at 929 (counsel for the creditor "demanded the Debtors pay [the creditor] $250,000.00 by June 25, 2018, or [the creditor's attorney] would send the chapter 7 trustee and the United States Attorney all the information he had about assets [the creditor's attorney] claimed the Debtors owned and had not disclosed on their bankruptcy schedules.").

Nothing alleged in the Complaint comes anywhere near alleging extortionary conduct. The Debtor is unhappy that IBI Falcon's principals wishes to speak with the Debtor's principal. The Debtor is unhappy that IBI Falcon's principals indicated they would pursue recourse—through the bankruptcy case—if an agreement was not negotiated. The Debtor is unhappy that its principal is being reminded of her guaranty of the Debtor's obligation to IBI Falcon.

These are not stay violations. Nothing alleged in the Complaint would constitute a stay violation even if proven true. And there is thusly no likelihood of success on Counts I or II of the Complaint, which are the only counts that invoke legally cognizable claims for relief in the first instance.

### b.  The Debtor Will Not Suffer any Irreparable Harm

The "irreparable harm" asserted in the Motion is a "loss of the property and [Ms. Williams'] equity." *See* Motion, DE #11, at § II(B). Transparently, the risk of such—allegedly intimated by one or more of the Defendants—is part of the bankruptcy process. No one is suggesting the real estate will be stolen or Ms. Williams' equity will be misappropriated; the Defendants' communications (as alleged) merely note that an unsuccessful chapter 11 case can invite a loss of property and equity.

Any sale of the real estate, termination of the Automatic Stay, conversion of the case, dismissal of the case, or confirmation of a competing chapter 11 plan would require entry of a

7

court order. These are not things that can happen without a court order. *See* 11 U.S.C. §§ 362, 1112, 1129.

For self-evident reasons, it is difficult to credit that the potential of this Honorable Court entering an order favorable to IBI Falcon constitutes an "irreparable harm" sufficient for this Honorable Court to issue an injunction.

### c. The Balance of Equities Supports Permitting a Creditor to Collect from a Guarantor

The Debtor is seeking to enjoin IBI Falcon from communicating with Ms. Williams which, as a necessary byproduct, would mean IBI Falcon cannot take actions to collect on Ms. William's guaranty of the Debtor's obligation. Such relief is neither equitable nor supported by law and thusly runs afoul of a balancing of the equities in this case.

As something of a bedrock principal of chapter 11 caselaw, non-debtors are not to be shielded by the automatic stay:

> Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so. Chapter 13, for example, contains a narrowly drawn provision to stay proceedings against a limited category of individual cosigners of consumer debts.  No such protection is provided to the guarantors of Chapter 11 bankrupts by § 362(a).

*Credit All. Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988) (citing *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 126-27 (4th Cir. 1983); 11 U.S.C. § 1301(a)). *See also CresCom Bank v. Terry*, 499 B.R. 494, 496 (D.S.C. 2013) ("Section 362(a) of the Bankruptcy Code provides that the filing of a petition for bankruptcy operates as a stay against all entities in any litigation against the debtor that commenced prior to the filing of the petition. This automatic stay provision applies to judicial proceedings and enforcement of judgments against only the

8

debtor, not third party defendants or co-defendants.") (citing 11 U.S.C. § 362(a)(1); *Williams*, 851 F.2d at 121 (4th Cir. 1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

Especially in the post-2024 environment, the availability of non-debtor relief in chapter 11 is breathtakingly limited. *See, generally, Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024) (prohibiting non-debtor releases in chapter 11). And while there may exist some theoretical, highly esoteric universe in which an exceedingly limited non-debtor stay might be potentially imposable, any such construct would almost assuredly invite some combination of (i) an equity holder making a significant cash infusion into a debtor; (ii) the debtor making significant adequate protection payments to an impacted creditor; and (iii) a clearly-confirmable plan of reorganization sitting on the docket. None of those factors are present here.

### d. Public Policy Disfavors Prior Restraints on Speech

The relief sought in the Motion—an injunction barring the Defendants from communicating with Ms. Williams—is a prior restraint on speech. The Debtor is not merely seeking to enjoin collection activities against Ms. Williams' guaranty; the Debtor is seeking to prohibit the Defendants from engaging in "communications of any kind," Motion, DE #11, at p. 3, "with the Debtor, with Zanetta M. Williams, . . . with any third party concerning the Loan," except through (i) motions and pleadings on the docket; and (ii) communications between counsel, *id*.

First, it bears notation this is wildly broad. Taken literally (and the language of an injunction ought not be subject to ambiguity), the prohibition on communications with "third parties" about the "loan" would mean the Defendants cannot communicate with their own investors about the status of this case. Similarly, the prohibition on communications excepts only motions and pleadings in the form of docket activity; conspicuously absent are (i) opposition

9

briefs; (ii) responses to claim objections; (iii) reply briefs; and (iv) oral arguments made in court. None of these are "pleadings." Fed. R. Civ. P. 7(a). And none of these are "motions."

The Defendants do not believe the Plaintiff is truly trying to enjoin court filings or even communications with investors. Such would, of course, border on absurdity. But the Defendants nonetheless point this out because of the enormous peril that would ensue from accepting the *ad damnum* clause in the Motion as-written.

More worrisome is the scope of relief the Debtor clearly intends to actually seek. What is being petitioned for is a prior restraint on speech. This is, independently, sufficient reason unto itself to deny the Motion. *See, e.g.*, *Santilli v. Van Erp*, 2018 U.S. Dist. LEXIS 79916, at *17-18 (M.D. Fla. Apr. 20, 2018) ("Prior restraints are the most serious and intolerable of First Amendment infringements. Plaintiffs offer no extraordinary circumstance to justify overriding the strong public policy against imposing a prior restraint on speech. Therefore, the public's interest weighs heavily against an injunction, which would operate here as a court-ordered infringement of protected speech.") (citing *Gunder's Auto Ctr. v. State Farm Ins.*, 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009)).

The Fourth Circuit has actually addressed precisely this issue, where a French national sued an American citizen, alleging efforts to have the French national wrongfully deported from the United States and subjected to bogus criminal charges in Virginia. *Alberti v. Cruise*, 383 F.2d 268, 269 (4th Cir. 1967). The defendant counterclaimed for "criminal conversation," moving for "a temporary injunction to restrain the plaintiff from contacting her by telephone, letter or otherwise. . ." *Id.* at 269. When the trial court granted such an injunction, the appellate court reversed, noting, *inter alia*:

> Furthermore, the order in the instant case enjoins the plaintiff from "contacting" Mr. Cruise or the members of his family. Considered in context the plaintiff would

10

thus be enjoined from speaking or writing to Mr. Cruise or any member of his family. We think this portion of the order is clearly a prior restraint upon Mrs. Alberti's rights of freedom of speech guaranteed by the First Amendment to the Constitution and cannot be upheld although motivated, it would seem, by a desire to protect *Mrs. Cruise* and her family from harm in unspecified respects. The danger to be avoided is not shown to be so great or so imminent as to justify the invasion of constitutional freedoms.

*Id.* at 272.

The Motion devotes one sentence to consideration of the public interest in this case. Whether or not the Plaintiff realizes the relief sought is a prior restraint of speech is unclear. But the severity of the injunction petitioned for assuredly should not be overlooked: the Debtor is asking for a TRO and PI restricting First Amendment rights because Ms. Williams does not wish to discuss any potential settlement of the Debtor's bankruptcy case or her personal liability on the aforementioned guaranty of the Debtor's obligation. Such is not nearly reason sufficient to impose a prior restraint on speech any broader than that already provided for in the Automatic Stay.

## V.    Conclusion

WHEREFORE, IBI Falcon respectfully prays this Honorable Court (i) deny the Motion; (ii) in the alternative, if a temporary restraining order is entered, schedule a full evidentiary hearing on a preliminary injunction as promptly as reasonable; and (iii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

11

Respectfully submitted,

Dated: June 11, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for IBI Falcon US LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of June, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson    dtjesq@dtjohnsonlaw.com

/s/ Maurice B. VerStandig
Maurice B. VerStandig

12